**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLES LISA, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>       Defendant. | Case No. 7:26-cv-6536<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles Lisa ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Unilever United States, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on his personal knowledge.

## NATURE OF THE ACTION

1. This is a class action on behalf of purchasers of Defendant's Knorr Rice & Pasta Sides (the "Products")[1] that claim to have "No Artificial Flavors or Preservatives[.]" These representations are false and/or misleading because the Products contain citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate—well-known artificial flavors and/or preservatives commonly used in food products.

2. Defendant's "No Artificial Flavors or Preservatives" representations are featured on the Products' labeling in order to induce health-conscious consumers to purchase food that is free from artificial flavors and/or preservatives. Defendant markets its Products in a

---

[1] The Products include all of Defendant's Knorr products that are advertised as containing "No Artificial Flavors or Preservatives" but contain citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate. *See infra* ¶ 10.

1

systematically misleading manner by misrepresenting that the Products do not contain artificial flavors or preservatives.

3.      Defendant has profited unjustly as a result of its deceptive conduct.  Plaintiff therefore asserts claims on behalf of himself and similarly situated purchasers for violation of New York General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

5.      This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

7.      Plaintiff Charles Lisa is a citizen of New York who resides in Yonkers, New York. Mr. Lisa has purchased the Product within the last three years.  Specifically, Mr. Lisa purchased Knorr Rice & Pasta Sides from a ShopRite in Scarsdale, New York in or around May 2026.  Mr. Lisa purchased the Product based on the Product's "No Artificial Flavors or Preservatives" representation, reasonably believing that the Product did not contain any artificial flavors or preservatives.    However, the Product he purchased contained artificial flavors and/or preservatives—citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate.  Mr.

Lisa would not have purchased the Product, or would have paid significantly less for the Product, had he known it contained an artificial flavor or preservative.

8.      Defendant Unilever United States, Inc. is a corporation organized under the laws of Delaware with its principal place of business located at 111 River Street, Hoboken, NJ 07030. Defendant formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

9.      **Defendant misrepresents that the Products contain "No Artificial Flavors or Preservatives[.]"** Defendant advertises on the Products that there are "No Artificial Flavors or Preservatives[.]" Thus, reasonable consumers are led to believe the Products are free from artificial flavors or preservatives. However, the Products contain citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate, well-known artificial flavors and/or preservatives. Examples of the Products' labeling, along with their ingredient list, are depicted below:

//

//

//

//

//

//

//

//

//

//







**INGREDIENTS:** PARBOILED LONG GRAIN RICE, VERMICELLI (WHEAT FLOUR, DURUM FLOUR), LESS THAN 2% OF: SALT, ONION POWDER, MALTODEXTRIN, GARLIC POWDER, SUGAR, HIGH OLEIC SUNFLOWER OIL, POTASSIUM SALT, NATURAL FLAVOR, CILANTRO, DISODIUM INOSINATE, DISODIUM GUANYLATE, CITRIC ACID, MONOSODIUM GLUTAMATE, **VITAMINS AND MINERALS:** NIACIN, FERRIC ORTHOPHOSPHATE (IRON), THIAMINE MONONITRATE (VITAMIN B1), FOLIC ACID, RIBOFLAVIN (VITAMIN B2), FERROUS SULFATE (IRON). **CONTAINS WHEAT.**





**INGREDIENTS:** PASTA (DURUM FLOUR, WHEAT FLOUR), CHEDDAR CHEESE (PASTEURIZED MILK, CHEESE CULTURES, SALT, ENZYMES), CORN STARCH, WHEY, MALTODEXTRIN, LESS THAN 2% OF: SKIM MILK POWDER, SALT, BUTTER (CREAM, SALT), SODIUM CITRATE, YEAST EXTRACT, ONION POWDER, HIGH OLEIC SUNFLOWER OIL, POTASSIUM SALT, ANNATTO EXTRACT (FOR COLOR), CITRIC ACID, DISODIUM INOSINATE, DISODIUM GUANYLATE, NATURAL FLAVOR, MONOSODIUM GLUTAMATE, **VITAMINS AND MINERALS:** NIACIN, THIAMINE MONONITRATE (VITAMIN B1), FERROUS SULFATE (IRON), RIBOFLAVIN (VITAMIN B2), FOLIC ACID. **CONTAINS MILK AND WHEAT.**

10.     The Products each contain multiple synthetic flavoring and/or preservative ingredients:

| Product | Synthetic Flavoring/Preservative Ingredients |
| --- | --- |
| Knorr Cilantro Lime Rice | Disodium Inosinate, Disodium Guanylate, Citric Acid |
| Knorr Marinara Pasta Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Buffalo Chicken Flavor Pasta Side | Citric Acid, Disodium Inosinate, Disodium Guanylate |
| Knorr Cajun Chicken Flavored Rice | Disodium Inosinate, Disodium Guanylate |
| Knorr Alfredo Broccoli Pasta Side | Sodium Citrate, Disodium Inosinate, Disodium Guanylate |
| Knorr Chicken Pasta Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Butter Pasta Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Butter & Herb Pasta Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Alfredo Pasta Side | Sodium Citrate, Disodium Inosinate, Disodium Guanylate |
| Knorr Parmesan Pasta Side | Sodium Citrate, Disodium Inosinate, Disodium Guanylate |
| Knorr Creamy Chicken Rice Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Chicken Rice Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Spanish Rice Side | Citric Acid, Disodium Inosinate, Disodium Guanylate |
| Knorr Herb & Butter Rice Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Mushroom Rice Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Chicken Fried Rice Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Cheddar Broccoli Pasta Side | Sodium Citrate, Disodium Inosinate, Disodium Guanylate |
| Knorr Cheesy Cheddar Pasta Side | Sodium Citrate, Citric Acid, Disodium Inosinate, Disodium Guanylate |
| Knorr Creamy Garlic Pasta Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Creamy Chicken Pasta Side | Sodium Citrate, Disodium Inosinate, Disodium Guanylate |
| Knorr Teriyaki Noodles Side | Citric Acid, Disodium Inosinate, Disodium Guanylate |

| Product | Synthetic Flavoring/Preservative Ingredients |
|---|---|
| Knorr Teriyaki Rice Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Rice Medley Side | Disodium Inosinate, Disodium Guanylate |
| Knorr Taco Rice Side | Citric Acid, Disodium Inosinate, Disodium Guanylate |
| Knorr Creamy Pesto Pasta Side | Sodium Citrate, Disodium Inosinate, Disodium Guanylate |

11.     **The Products' citric acid is artificial and chemically processed.**  Citric acid occurs naturally when derived from certain citrus fruits.  That is not true of the citric acid contained in several of the Products.  The citric acid contained in the Products is commercially manufactured and the result of extensive chemical processing and is therefore artificial.[2]  In fact, more than 99 percent of commercially produced citric acid, including the citric acid contained in the Products, is manufactured through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[3]  Negative side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and

---

[2] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), https://pmc.ncbi.nlm.nih.gov/articles/PMC7178817/; R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), at 1, https://doi.org/10.1186/s13065-017-0251-y ("[P]roduction of citric acid from lemon juice ... started to decline [in the early 1900s] due to the introduction of the commercial production ...."); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 ("Citric acid is *exclusively produced* by fermentation with the filamentous fungus *Aspergillus niger*.") (emphasis added); Walid A. Lotfy et al., *Citric Acid Production by a Novel* Aspergillus niger *Isolate: II. Optimization of Process Parameters Through Statistical Experimental Designs*, 98 BIORESOURCE TECH. 3470 (2007), available at https://www.sciencedirect.com/science/article/abs/pii/S0960852406005943 ("demand can only be satisfied by biotechnological fermentation processes").

[3] I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018), https://pubmed.ncbi.nlm.nih.gov/30128297/.

respiratory symptoms.[4]

12. A technical evaluation report for citric acid compiled by the United States Department of Agriculture Marketing Servies ("USDA AMS") further explains that it is not commercially feasible to use natural citric acid extracted from fruits:

> Traditionally by extraction from citrus juice, [citric acid is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid.[5]

13. As one of the USDA AMS reviewers commented:

> [Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic.[6]

14. The FDA has determined that manufactured citric acid is not natural; it is artificial. The FDA sent warning letters to Hirzel Canning Company and Oak Tree Farm Dairy, Inc., for similar violations, saying that the FDA's policy involving the use of the word natural means that nothing artificial or synthetic has been added to the product, and that a product that labels itself "100% Natural" or "All Natural" violates that policy if it contains citric acid, and that the presence of citric acid precludes the use of the term natural to describe the product.

15. The FDA explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions:

---

[4] *Id.*

[5] https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%201995.pdf

[6] *Id.*

(a) The solvent used in the process consists of a mixture of *n*-octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine." 21 C.F.R. § 173.280 (emphasis added). Chemical solvents such as *n*-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Product from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Product is produced through chemical solvent extraction and contains residues of those chemical solvents.

16.     The Toxicology Reports Journal study explains that "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[7] The study further explains:

> Given the thermotolerance of *A. niger*, there is great potential that byproducts of *A. niger* remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of *A. niger* even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies[.]

*Id*. (internal citation omitted).

//

//

//

---

[7] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, Toxicology Reports (2018), at 809, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/.

17.      The EPA provides the following schematic of the manufacturing process for citric acid, which includes the use of synthetic solvents like sulfuric acid:[8]



18.      Dictionary definitions define "artificial" as something made by man.  For example, "artificial" is defined as "made by human skill; produced by humans …."[9]  Merriam-Webster's online dictionary states that "artificial" means "made, produced, or done by humans especially to seem like something natural …."[10]  Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural[.]"[11]

19.      Below are images of the chemical process used to create citric acid for use in food and drinks—a process that is visibly artificial as understood by reasonable consumers:[12]

//

---

[8] https://www.epa.gov/system/files/documents/2023-03/Citric+Acid+Supply+Chain+Profile.pdf.

[9] *Artificial*, DICTIONARY.COM, available at https://www.dictionary.com/browse/artificial.

[10]  *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, available at https://www.merriam-webster.com/dictionary/artificial.

[11]      *Artificial*,      CAMBRIDGE      DICTIONARY,      available      at https://dictionary.cambridge.org/us/dictionary/english/artificial

[12] Images depict a fermentation citric acid plant.  *See* https://cnmeckey.en.made-in-china.com/product/cOpAwZebwPrF/China-High-Cost-Performance-Fermentation-Citric-Acid-Plant.html.

 

 

//

//

//

//

//

20.    **Citric acid is an artificial flavor.**  Citric acid acts as a flavoring when added to food and drink products, including the Products at issue.[13]  Citric acid has a sour, acidic, and slightly tart flavor.  *Id.*

21.    **Citric acid is a preservative.**  Citric acid is a preservative as the term is defined by the FDA in 21 C.F.R. §101.22(a)(5):  "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

22.    Food preservatives are classified into two main groups: antioxidants and antimicrobials.  Food scientists agree that the chemical properties of citric acid make it a preservative.

23.    In its "Overview of Food Ingredients, Additives & Colors," the FDA lists citric acid as a preservative.[14]  The FDA also recognizes that preservatives, like citric acid, are commonly used in packaged foods such as the Products.

24.    Under the "What They Do" table heading, the FDA states that preservatives help "[p]revent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[15]

---

[13] https://www.webstaurantstore.com/blog/3350/what-is-citricacid.html; see also *Flavourings and Flavour Enhancers*, 43 BEVERAGE & FOOD WORLD, at 8 (June 2016) ("[C]itric acid [is] used to assist in creation of specific sour or fermented tastes.").

[14] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf.

[15] *Id.*

25.    The FDA's classification of citric acid as a preservative is also reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc.  In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions.  21 C.F.R. [§] 101.22" (emphases added).[16]

26.    **Citric acid has antioxidant and antimicrobial properties.**  Citric acid acts as an antioxidant via two processes—inhibiting enzymes and chelating metals.  Certain enzymes naturally exist in food products that oxidize and breakdown the food products' molecules.  Citric acid deactivates these enzymes, thereby functioning as a preservative.[17]  Citric acid also chelates metal ions,[18] which stabilizes and preserves food products.

27.    Citric acid also has antimicrobial properties and directly inhibits the growth of some bacteria.[19]  This is yet another reason why food scientists classify citric acid as a preservative.[20]

---

[16] *See* October 6, 2010 FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc.

[17] *See* AGRICULTURE.INSTITUTE, HOW ENZYME-TARGETING PRESERVATIVES PROTECT FOOD QUALITY (last updated June 19, 2025), available at https://agriculture.institute/food-microbiology-cpo/enzyme-targeting-preservatives-food-quality/.

[18] *See* E. Książek et al., *Citric Acid: Properties, Microbial Production, and Applications in Industries*, 29 MOLECULES (2024), at 20, https://doi.org/10.3390/molecules29010022 ("Citric acid's ability to chelate metal ions … make it an ideal additive in food and nutraceutical production").

[19] *See, e.g.*, E. Eliuz, *Antimicrobial activity of citric acid against Escherichia coli, Staphylococcus aureus and Candida albicans as a sanitizer agent*, 8 EURASIAN JOURNAL OF FOREST SCIENCE (2020), https://dergipark.org.tr/en/pub/ejejfs/article/787021.

[20] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid.

28.     Even if the Products' citric acid does not function as a preservative in the Products, it nonetheless qualifies as a preservative given that it has the capacity or tendency to do so. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, tends to prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving");[21] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving").[22]

29.     **The Products at issue contain additional, synthetic ingredients in addition to citric acid.** In addition to citric acid, Defendant also uses synthetic ingredients such as sodium citrate, disodium inosinate, and disodium guanylate.

30.     **Sodium citrate**: First, several Products contain sodium citrate. Sodium Citrate is a synthetic, non-natural ingredient used in packaged foods, including the Products, to create a sour flavor and as a preservative. Sodium Citrate is the trisodium salt of citric acid and is classified as "synthetic" under 7 C.F.R. § 205.605.

31.     **Disodium inosinate:** The Products also contain disodium inosinate. Disodium Inosinate is a synthetic flavor enhancer.[23] When combined with Disodium Guanylate (like in the Products here), Disodium Inosinate imparts an umami (savory or meaty) flavor. It is made through one of two manufacturing methods.

32.     In the first method, bacterial fermentation of carbon source or sugar is used to

---

[21] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative.

[22] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative.

[23] Márcio Carocho et al., *Adding Molecules to Food, Pros and Cons: A Review on Synthetic and Natural Food Additives*, 13 COMPREHENSIVE REVIEWS IN FOOD SCIENCE AND SAFETY, at 388, available at https://ift.onlinelibrary.wiley.com/doi/epdf/10.1111/1541-4337.12065.

produce inosine, which reacts with phosphoryl chloride to get inosinic acid, which is then neutralized.

33.     Alternatively, Disodium Inosinate can be produced through the degradation of nucleotides into nucleic acid from yeast extract.

34.     **Disodium guanylate:**  The Products also contain disodium guanylate.  Disodium Guanylate is a synthetic flavor enhancer.[24]  When combined with Disodium Inosinate, it imparts an umami (savory or meaty) flavor.[25]  It is manufactured by inducing sugar fermentation to obtain guanosine, which reacts with phosphoryl chloride, and it is then neutralized with sodium hydroxide.

35.     **Defendant exploits consumer demand for products without artificial flavors or preservatives.**  Defendant's misrepresentation seeks to capitalize on consumers' preference for products with no artificial ingredients.   Indeed, "[f]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health .... 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent)."[26]

---

[24] *See id.*

[25] *See Disodium Guanylate*, MILLIPORESIGMA, available at https://www.sigmaaldrich.com/US/en/product/sial/phr1514 ("Disodium Guanylate is a flavor enhancer, obtained via chemical synthesis. It is used in combination with … disodium inosinate and helps in contributing to a fundamental taste sensation called savory….").

[26] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, MINTEL (Sep. 3, 2015), available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed.

16

36.     The global wellness economy is estimated to be $5.6 trillion dollars and is forecasted to reach $8.5 trillion by 2027.[27]  "Healthy eating, nutrition & weight loss will ... become the largest wellness market by 2025." *Id.*  Thus, consumers are willing pay a premium for healthy, non-artificial flavored items, as they hoped for in purchasing the Products.

37.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff seeks to represent a class defined as all persons in the United States who, during the applicable statute of limitations period, purchased Defendant's Products (the "Class").

39.     Plaintiff seeks to represent a subclass defined as all Class members who reside in New York who purchased the Products (the "New York Subclass") (collectively with the Class, the "Classes").

40.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

41.     Common questions of law and fact exist as to all Class members and predominate

---

[27] Global Wellness Institute, *The Global Wellness Economy Reaches a Record $5.6 Trillion—And It's Forecast to Hit $8.5 Trillion by 2027*,

https://globalwellnessinstitute.org/press-room/press-releases/globalwellnesseconomymonitor2023/.

over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, the true nature and presence of artificial flavors in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; and whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

42.    The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

43.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

44.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment

18

of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation of the New York General Business Law ("GBL") § 349
### (On behalf of the New York Subclass)

45. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

46. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

47. Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

48. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

49. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

50. Defendant made false and misleading statements by marketing the Products as containing "No Artificial Flavors or Preservatives" when in fact they contain citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate, which are artificial flavors and/or preservatives.

51. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

52. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality

19

of its Products, as discussed throughout.

53.     Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

54.     Defendant's actions set forth above occurred in the conduct of trade or commerce.

55.     The foregoing deceptive acts and practices were directed at consumers.

56.     Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Products.

57.     Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Products had they known the truth, and (b) they overpaid for the Products on account of the "No Artificial Flavors or Preservatives" misrepresentation, as described herein.

58.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover his actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

59.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

60.     Plaintiff brings this claim individually and on behalf of the members of the New

20

York Subclass against Defendant.

61.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

62.    Defendant's labeling and advertisement of the Products was false and misleading in a material way.  Specifically, Defendant advertised the Products as containing "No Artificial Flavors or Preservatives" when in fact they contain citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate, which are artificial flavors and/or preservatives.

63.    Plaintiff and reasonable consumers understand Defendant's misrepresentation to mean that the Products do not contain artificial flavors or preservatives.

64.    This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

65.    This misrepresentation has resulted in consumer injury or harm to the public interest.

66.    As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Products on account of the "No Artificial Flavors or Preservatives" misrepresentation, as described herein.

67.    By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

//

21

**COUNT III**
**Breach of Express Warranty**
**(On behalf of the Class and the New York Subclass)**

68.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

69.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

70.    Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain "No Artificial Flavors or Preservatives[.]"

71.    Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

72.    In fact, the Products do not conform to Defendant's representations and warranties because the Products contain citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate, well-known artificial flavors and/or preservatives.  By falsely representing the Products in this way, Defendant breached its express warranty.

73.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for them, had they known they contained an artificial flavor or preservative.

74.    On February 25, 2026, Plaintiff sent Defendant, via certified mail, a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanding that Defendant make full restitution by refunding the monies received therefrom.

22

## COUNT IV
## Unjust Enrichment
## (In the Alternative)

75.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

76.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

77.     Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

78.     Defendant has knowledge of such benefits.

79.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchase of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contain "No Artificial Flavors or Preservatives" when in fact they contain citric acid, disodium inosinate, disodium guanylate, and/or sodium citrate, well-known artificial flavors and/or preservatives.

80.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class and New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass;

(b)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)     For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(g)     For an order awarding reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: July 30, 2026                                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:     */s/ Julian C. Diamond*
       Julian C. Diamond

**BURSOR & FISHER, P.A.**
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  jdiamond@bursor.com

*Attorney for Plaintiff*

24